[PHILADELPHIA, FEBRUARY 11th, 1837.]

## ENGLEBERT *against* BLANJOT.

### IN ERROR.

1. The 5th section of the act of the 24th of March, 1818, requiring voluntary assignments for the benefit of creditors, to be recorded within thirty days, was not confined to the case of an assignment for the benefit of *all* the creditors of the assignor.

2. An assignment made in 1833, of property to a particular creditor in trust, to sell the same; and after paying himself, and three other creditors of the assignor, to return the surplus to the assignor, which was not recorded within the time required by the act of 1818, was *held* to be void, as against the creditors of the assignor.

3. The trustees of an insolvent debtor possess all the right of his creditors, to set aside a fraudulent or irregular assignment; and may therefore recover property which is the subject of a voluntary assignment previously made, but not recorded according to law.

4. The case of *Thomson* v. *Dougherty,* (12 *Serg. & Rawle,* 448,) overruled.

THIS was a writ of error to the District Court for the City and County of Philadelphia, to remove the record of an action of replevin, brought in that court by Leonard Englebert against Louis François Blanjot, for certain articles of marble work, &c.

The facts of the case as they appeared in evidence on trial in the Court below, were substantially as follows:

On the 13th day of March, 1833, Cyprian Poullalier, of the City of Philadelphia, marble mason, executed to the defendent, the following assignment:

" Know all men by these presents, that I, Cyprian Poullalier, of the city of Philadelphia, marble mason, for and in consideration of the money due by me to Louis F. Blanjot, also of the said city, marble mason, to wit: the sum of $220 lent by him to me, on the 15th

of August, 1832, and the sum of $630 due him for his salary as my foreman, and of one dollar to me in hand paid by said Louis F. Blanjot, have assigned, transferred, sold and set over unto the said Louis F. Blanjot, his executors, and administrators, and assigns, all the marble sawed and unsawed, marble mantel pieces, slabs, steps, tombstones, columns and entablatures, soap stone, soap stone grates, grate pans, grate blowers, fire bricks, soap stone slabs or tops and brackets, saws for marble, iron and wooden saws, soap stone sawing machine, work benches, tools, fixtures and personal property, whatsoever, which was in the shop and yard occupied by me in the buildings, lots and tenements, near Pine street in South Seventh street, in the said city; upon this trust and special confidence, however, that he the said Louis F. Blanjot, shall with all convenient speed, sell the said property so as aforesaid assigned, transferred, sold and set over to him, and with the proceeds of any sale or sales thereof, pay and satisfy himself, the amounts on the other side specified, due to him this day by me; and after so paying himself, to pay Pierre Boneuil, of the said city, the sum of $200, lent to me by him; and to pay Anthony G. Querville, the sum of $50 lent to me; and lastly, to Alphonse Lejambre, the sum of $62, due to him by me, for merchandize; and after so paying the aforesaid sums, to return *the surplus* arising from any of the said sale or sales, to me, my executors, administrators and assigns.—In witness whereof, I have hereunto set my hand and seal this 13th day of March, 1833."

This assignment was never recorded.

On the 14th of March, 1833, Poullalier applied to the Court of Common Pleas, for the benefit of the Insolvent laws; setting forth in his petition, that he had no property, having by the assignment above mentioned, conveyed all his estate, &c. for the benefit of creditors—and annexed a schedule of the articles conveyed; and a list of his creditors; a small proportion of whom only were provided for in the assignment. On the 3d of April following, he executed to Louis F. Blanjot, and J. W. Goodridge, the assignment required by law, of all his estate and effects; and was duly discharged.

Blanjot and Goodridge declined acting as trustees; and on the 20th of April, 1833, on the petition of Leonard Englebert, the Court dismissed them from the trust, and appointed Englebert trustee in their place, who gave bond according to law.

This action was instituted by Englebert, to recover the goods mentioned in the assignment, and which were in the possession of the defendant.

The defendant pleaded property in the goods; and upon this issue, the cause came on for trial, before Jones, J. on the 5th of February,

1836, when upon the facts above stated, the learned Judge directed a verdict for the defendant, reserving for the consideration of the Court, the following questions:

1. Whether the voluntary assignment by Poullalier to the defendant, was void by reason of its not having been recorded.

2. Whether the assignment made by Poullalier to the plaintiff, under the insolvent laws, was effectual to pass the property in the goods mentioned in the assignment to the defendant, if the latter were void in consequence of not having been recorded.

After argument upon the points reserved, the District Court gave judgment for the defendant;* whereupon the plaintiff removed the cause to this Court, and assigned the following errors:

" 1. The charge of the Judge to the jury, that the plaintiff could not recover.

2. The judgment rendered for the defendant, by the Court in bank; although the voluntary assignment of Poullalier was void, and although the assignment of said Poullalier in the Court of Common Pleas, and the appointment of the plaintiff as trustee for the creditors, were effectual to pass the goods and effects mentioned in the writ, to the plaintiff.

3. The charge of the Judge, that the plaintiff could not recover if the voluntary assignment of Poullalier were void, and that the assignment of Poullalier in the Court of Common Pleas, and the appointment of the plaintiff trustee for the creditors, were not effectual to pass to the plaintiff, the goods and effects mentioned in the writ."

Mr. *C. Gilpin,* for the plaintiff in error, argued:—

1. That the 5th section of the act of 24th March 1818, which declares that " all assignments so as aforesaid, to be made and executed, which shall not be recorded, &c. within thirty days after the execution thereof, shall be considered null and void as against any of the creditors of the assignor," is applicable to the case of an assignment for the benefit of particular creditors; and therefore that this assignment was void. The words, " as aforesaid," in the 5th section refer to the first section, where the legislature provide for the settlement of the accounts of the assignees; and in the succeeding sections, it is plain that their intention was to make the benefits and responsibilities general. The words, " any of the creditors," in the 5th section mean those without as well as those within the assignment. The acts of the 29th of March 1823 and the 14th of April 1828 support this view of the act of 1818. Upon the construction of acts generally, he cited *Dwarris on Statutes,* 46, 59. *People* v.

* See 1 *Miles,* 224, (*Englebert* v. *Blanjot.*)

(Englebert v. Blanjot.)

*Utica Ins. Co.* (15 *Johns.* 358.) *Whitney* v. *Whitney*, (14 *Mass. Rep.* 92.) *Seidenbender* v. *Charles*, (4 *Serg. & Rawle*, 166.) 6 *Bac. Abr.* 384, &c. *Plowden*, 205, 465. 11 *Mod.* 161. 1 *Showers*, 491. According to the argument on the other side, the omission of a single creditor, if wilful on the part of the assignor, would nullify all the provisions of the act.

2. That the trustee, under the insolvent laws, represents credi-tors; and therefore has a right to treat the assignment as void by reason of the failure to record it. If the assignment is void against *one*, it is against all; and it is of no importance whether the credi-tors proceed by execution against the goods, or through the machi-nery of the insolvent laws. The Court would prefer the latter, however, since it is for the benefit of all. The case of *Thompson* v. *Dougherty*, (12 *Serg. & Rawle*, 448,) was relied upon in the courts below. That was the case of a *voluntary* assignment; which is distinguishable from one made under the insolvent laws; but it is very questionable whether the decision of the judge in that case, which was at *nisi prius*, would now be sustained. *M'Allister* v. *Marshal*, (6 *Binn.* 346.) *Johnson* v. *Harvey*, (2 *Penn. Rep.* 93.) *M'Clurg* v. *Lecky*, (3 *Penn. Rep.* 94.) *Stockton* v. *Wilson*, (*Id.* 132.) *M'Kee* v. *Gilchrist*, (3 *Watts*, 282.) *Power* v. *Hollman*, (2 *Watts*, 220.) *Smith* v. *Richwine*, (1 *Penn. Rep.* 375.) *Passmore* v. *Eldridge*, (12 *Serg. & Rawle*, 198.) *Bradway's Est.* (1 *Ashmead*, 212,) shows that an executor or administrator may set aside a fraudulent assign-ment; which is stronger than this. [ROGERS, J.—We have said, that to authorise an administrator to interfere in such case, the estate must be *insolvent*.]

Mr. *Troubat*, and Mr. *F. W. Hubbell*, contra.

1. The construction of the act of 1818 always has been, that it applied to those assignments only, which were for the benefit of *all* the creditors of the assignors; and so the District Court has decid-ed in more than one case previous to this without appeal. The mischief would be very great, if special assignments were now held to be within the act. The 3rd section seems to make a distinction between creditors entitled to claim under the assignment, and those who are not.

2. The assignment is not declared to be absolutely void, but *sub modo*. It is good against the assignor. A trustee under the insolvent law is not necessarily a creditor. He acts for the benefit of all the creditors as well those who were such at the time of the voluntary assignment as those who become such afterwards. How can he then be considered as coming within the scope of the act of 1818. There is a broad distinction between fraudulent con-veyances and such as may be avoided for non-compliance with certain injunctions of the law. *Johnson* v. *Harvey*, (2 *Penn. Rep.*

82.) *Krause* v. *Eeitel*, (3 *Rawle*, 203.)  *Ankrim* v. *Woodward*, (4 *Rawle*, 353.)  *Thompson* v. *Dougherty*, (12 *Serg. & Rawle*, 458.)

The opinion of the Court was delivered by

GIBSON, C. J.—The act of 1818 is not only remedial, but greatly beneficial; and it is consequently to be liberally construed in suppression of the mischief. It has lessened, if it has not eradicated, abuses by which creditors were baffled, and sometimes eluded. The debtor not only makes his own bankrupt law, but appoints his own assignees: the consequence of which was a defect of accountability, and sometimes an ineffectual pursuit of the fund by actions at law against successive trustees, who had it in turn, till pursuit were abandoned. The provision for registration extends to all the cases that are subject to the chancery powers of settlement of accounts and removal; and if an assignment for the benefit of particular creditors, be not within the one, it is not within the others. In the interpretation of such a law, the spirit of the enactment is to be extended to cases within the mischief, though not within the letter. But what is the letter? Not express, that the trust must be for all the creditors, but, speaking in reference to the debtor, that it be " for the use of *his* creditors," or " for the use of such person to whom such assignment is made, and *the other* creditors." Strike out the word 'his' in the first clause, and the remaining words, " for the use of creditors," are literally satisfied by a trust for less than the whole. The assignment here is certainly for the use of creditors. But granting that the words, 'his creditors,' and 'the other creditors,' comprise the whole number, yet the reprobated construction put upon one of the best remedial statutes that ever was enacted, which was frustrated by the introduction into conveyances of a few insignificant words, should warn us of the danger of expounding remedial laws too narrowly. What was effected by those words in respect to the statute of uses, might, under the interpretation of the court below, be effected with equal facility in respect to the statute before us, which might be eluded by the simple device of leaving a single creditor out of the trust. Subject to be thus parried, the provisions of the law would be of little worth. It is known that this interpretation produced the specific provision for cases like the present, which is found in the act of 1836; and which had been indispensable, were it not entirely clear that a trust for particular creditors, is within the purview of the original act.

Taking the assignment, then, to be void, how far was the property vested in the plaintiff by the proceedings on the petition of the assignor as an insolvent debtor? The avoidance of the assignment for defect of registry, as to creditors, had relation to its date; yet being good between the parties, the trustee acquired the property of the debtor as it stood at the time of his appointment. But he acquir-

(Englebert v. Blanjot.)

ed it as-it stood, obnoxious to payment of the debts. What then is the interest of a debtor in property fraudulently conveyed by him? As regards benefit to himself, absolutely nothing; but as regards benefit to those attempted to be defrauded, something tangible and substantial. For the benefit of these, the ownership remains in him as a trustee *ex maleficio*. On no other principle could the legal title be sold even on a judicial process against him; yet it is constantly seized in execution as his, and sold as his. The title remains in him, so far as is necessary to protect the interest of his creditors. A subsequent assignee for his own benefit, would take nothing in prejudice of his predecessor; but an assignee by process of law, or perhaps even by voluntary assignment, adding the character of a creditor to the operative words of the conveyance, stands on more advantageous ground. It is conceded, that a purchaser at sheriff's sale takes paramount to the preceding assignment; yet he purchases no more than what was the debtor's property, which however includes all that·was potentially his property for payment of his debts. If a fraudulent conveyance be no conveyance as to creditors, it follows that the title remains in the debtor as to his creditors; and why may he not convey it for their benefit? It would be a shallow rule that would disable him from yielding to them voluntarily what they might wring from him by process. To allow the trustee to distribute it, would more conduce to that sort of equity which consists in equality of participation, than to make it the subject of a judicial scramble in the hands of the fraudulent assignee. The difficulty is to understand how the trustee, succeeding as he does to the property of the debtor, who may not dispute the legality of the conveyance, can claim what the debtor had not. But if the fraudulent conveyance be, as it has frequently been pronounced, a nullity as to the interests, attempted to be defrauded, the debtor actually has the estate for purposes of satisfaction; and there is no great difficulty in conceiving that he may transmit it to the representative of his creditors, even by a voluntary conveyance. But the *cessio bonorum* to a trustee who comes to the title not under, but paramount to, the debtor, so far from being voluntary, is extorted as the price of the debtor's liberty. It is the fruit of mesne or final process, and not the less compulsory for having been embraced as an alternative. Even where compulsion is out of the question, if the representative of the debtor be also the representative of unsatisfied creditors, though deriving his title immediately from the debtor, the effect is the same; as was held in *Buehler* v. *Gloninger*, (2 *Watts*, 226,) where the administrator of an insolvent estate was allowed to show that a bill of sale executed by the intestate, was fraudulent: whence an irresistible inference that a fraudulent assignor may transmit more to the representative of his creditors than he could insist upon for himself. Nothing is to be found in *Ankrim* v. *Woodward*, (4 *Rawle*, 345,) which conflicts with this. There no

(Englebert *v.* Blanjot.)

more was ruled than that trustees in a domestic attachment are not exempt from defalcations, from which the absconding debtor would not have been exempt; for the only principle that could touch the point in question, was disposed of by the attachment law of 1807; which, by investing the trustees with property fraudulently conveyed by him, is only declaratory of the common law. In like manner, *Krause* v. *Beitel*, (3 *Rawle*, 199,) barely determines that the interest of a trustee in debts due to an insolvent debtor, is no greater than the interest of the insolvent himself at the time of the cession—a very different thing from his fiduciary interest in property fraudulently conveyed by him. In *Thompson* v. *Dougherty*, (12 *Serg. & Rawle*, 448,) it was held, however, that a trustee by deed for the benefit of creditors, may not avoid a previous fraudulent assignment. That case might, if necessary, be distinguished from the present, where the transfer is by process of law; but in order to avoid misconception in respect to the foundation of the principle to be established, it is better to say at once, that we consider that case as a *nisi prius* decision of a single judge, and unsustainable by principle or authority. No other decision can be thought to bear on the point; and it would therefore seem, the plaintiff had made out a case to recover.

Judgment reversed, and a *venire de novo* awarded.