## Hood · *against* Fahnestock.

If one, in the course of his business as agent, attorney or counsel for another, obtain knowledge from which a trust would arise, and afterwards becomes the agent, attorney or counsel of a subsequent purchaser in an independent and unconnected transaction, his previous knowledge is not notice to such other person for whom he acts.

A *bona fide* purchaser for a valuable consideration, is protected under the statutes of 13 and 27 Eliz., whether he purchases from a fraudulent grantor or grantee; and there is no difference, in this respect, between a deed to defraud subsequent creditors, and one to defraud subsequent purchasers.

ERROR to the common pleas of *Mercer* county.

Obed Fahnestock against John M. Hood. The court below thus stated the case, and charged the jury:

This is an ejectment to recover the possession of a house and lot in Mercer. On the part of plaintiff, there is in evidence the record of a judgment in the district court of Dauphin county. O. Fahnestock *v*. Jacob and James Henington, *testatum fieri facias* to May term 1826, to sheriff of Mercer county. *Alias fieri facias* levied on lot in dispute; inquisition held in April 1834; *venditioni exponas* returned sold to plaintiff for 250 dollars, August 1834. Sheriff's deed for house and lot in dispute.

Deposition of Scott, proving that on the 15th of June 1820, he sold the lot in dispute to Jacob Henington; two years after, and after the house was built by Jacob, he came to deponent and said James had worked a good deal for him, and asked deponent to lift the deed made, as he wanted deponent to make a deed for the lot to James Henington. Deponent accordingly made the deed some time after. This deed was brought to me to execute by Messrs Bank, Foster, and Jacob Henington. The old deed was given up to me; never received any thing from James; James had no means to pay for it.

On the part of defendant, there is in evidence a deed from Scott to James Henington, dated June 12, 1822. Judgment, Hood *v*. James Henington, dated June 29, 1823, in common pleas of Mercer county. Judgment revived in May 1824; *fieri facias* to August term 1824; inquisition waived, and sold, in July 1824, to A. M'Gill, for 650 dollars. The bond on which judgment was entered, dated June 29, 1822, in handwriting of Jacob Henington. Deposition of A. M'Gill, proving he was the bail of Jacob and James, and seeing goods in Allegheny Town, marked J. Henington, issued an attachment. James offered his own judgment to deponent, who refused to take it unless he brought a statement in writing from

VIII.—2 R

[Hood v. Fahnestock.]

Jacob that he did not claim the house in dispute; that he brought the writing, took the bond, entered it up, sold the lot at sheriff's sale, became the purchaser, and conveyed to Hood for the same he gave for it. Mr Banks drew the deed from deponent to Hood, with a clause of general warranty, which deponent refused to give. It was then altered by Mr Banks. Deponent would have given a general warranty deed, if selling at its value. He had purchased to indemnify himself as bail, and sold to Hood to release him from his responsibility. Believed the house to be Jacob's at the time, and that was his reason for requiring a writing, and an after verbal disclaimer of ownership. Clark proves that, as agent for Hood, he leased the house for 100 dollars a year to Leech, who was in about a year, and leased to Jacob Henington. Thought that Jacob built the house. Holstein states that Jacob occupied the house from 1828 to 1833, under the same lease; that he received 39 dollars in rent from him for defendant. Banks proves that he leased the house from Jacob in the spring of 1821, took possession in August 1821, and occupied it until August 1824, and paid the rent to Jacob. Clark proves that the persons engaged in building the house were paid by Jacob. Record of judgment in Dauphin county, Plaintiff *v.* Jacob Henington, of June term 1822, for 642 dollars, with interest from April 1822. Judgments in Mercer county against Jacob Henington, before date of conveyance from Scott to James Henington, amounting to 10,671 dollars 19 cents. Moon proves he was employed by Jacob to build the house, and paid by him out of his store, and that James was working as a hand, and was paid for boarding the hands out of the store. The entry of a settlement between Jacob and James, dated January 1821, has been read.

Was there any consideration passed from James to Jacob, before or at the time the deed from Scott to Jacob was redelivered, and a deed made from Scott to James—or was Jacob indebted to James at the time he directed the deed to be made to him? Of this there is no evidence, save Jacob's declaration that James was a good fellow, and did work for him; and the settlement which appears on the books, together with the testimony of the witnesses, appears to negative his having had any thing to do with the purchase of the lot, or building the house, or paying any thing on account of it. If satisfied from the evidence, that there was no consideration received from James by Jacob, and that Jacob was in failing circumstances, and immensely in debt at the time Scott conveyed to James, although the transaction would be valid and binding as between Jacob and James, it is fraudulent and void as to Jacob's creditors; and although fraudulent and void as to the creditors of Jacob, in any controversy that might have arisen between them and James, yet a purchaser at private sale, from James, or of his interest at sheriff's sale, without notice of the transaction between Scott, Jacob and James, would be protected as an innocent purchaser without notice. Had Hood notice of James's title, and of the transactions between Jacob, Scott,

[Hood v. Fahnestock.]

and James, at the time, or before the date of the conveyance from M'Gill to him? If defendant, or his attorney, had notice before or at that time, plaintiff is entitled to recover. If they had not legal notice, they would be protected as innocent purchasers, and plaintiff would not be entitled to recover.

It is contended by defendant's counsel, that Jacob's statement to M'Gill, at the time of sheriff's sale, has the same effect as if there had been a conveyance from Jacob to James for a full consideration. It is perfectly clear that, after those declarations, Jacob himself could not set up any claim to the lot against the purchaser at sheriff's sale, but it is entirely different as to the creditors of Jacob. The court is of opinion that, if you are satisfied, the deed from Scott to Jacob was, at his instance and request, returned, and the deed to James made and delivered, without any consideration paid, or passing from James to Jacob, and done for the purpose of delaying, hindering, or defrauding the creditors of Jacob, and that M'Gill had notice of it, he would derive no title by his purchase at sheriff's sale; and his grantee, the defendant, if he had notice before, or at the time of conveyance by M'Gill to him, would derive no title; and plaintiff would be entitled to recover.

Errors assigned:

1. The court erred in charging the jury, "that if the defendant had notice of the transaction between Scott, Jacob and James, the plaintiff would be entitled to recover," thereby submitting a fact to be found by the jury without evidence.

2. In charging the jury that the disclaimer of title made by Jacob, in writing and by parol, was not to operate in favour of defendant.

3. In answering the following point of defendant in the negative, viz: The court are requested to charge the jury, " that the employment of Mr Banks, by Messrs Hamilton and Hood, to draw a deed from M'Gill to them, when, at the time of drawing said deed, he had knowledge of a trust arising out of said land, from the fact of having drawn the deed from Scott to James Henington, is not legal notice of said trust to said Hamilton and Hood."

*Holstein,* for plaintiff in error, on the subject of the third error assigned, cited 3 *Penn. Rep.* 69; 2 *Sug. Vend.* 21; 2 *Atk.* 242; 3 *Atk.* 294, 392.

*Pearson* and *Forward,* for defendant in error, on the same point, cited 3 *Atk.* 646.

The opinion of the Court was delivered by

SERGEANT, J.—The first and second errors are unsupported; but in the matter assigned as the third error, the court answered the defendant's point incorrectly. · It is now well settled that if one in the course of his business as agent, attorney, or counsel for another,

obtain knowledge from which a trust would arise, and afterwards become the agent, attorney, or counsel of a subsequent purchaser in an independent and unconnected transaction, his previous knowledge is not notice to such other person for whom he acts. The reason is, that no man can be supposed always to carry in his mind the recollection of former occurrences; and, moreover, in the case of the attorney or counsel, it might be contrary to his duty to reveal the confidential communications of his client. To visit the principal with constructive notice, it is necessary that the knowledge of the agent or attorney should be gained in the course of the same transaction in which he is employed by his client. The court, therefore, we think, erred in the answer to the defendant's third point, which is, in substance, the same as their answer to the plaintiff's sixth point.

Another ground has been taken by the plaintiff, in the argument here, that the deed from James Henington was void by 13 *Eliz.*, even though Hood, the defendant, was a *bona fide* purchaser for a valuable consideration—that statute protecting only the *bona fide* purchaser from the fraudulent grantor, and not from the fraudulent grantee. The current of authorities, however, in this country, is to the contrary.

It is now the settled American doctrine, that a *bona fide* purchaser for a valuable consideration is protected under the statutes of 13 and 27 *Eliz.*, as adopted in this country, whether he purchases from a fraudulent grantor or fraudulent grantee, and that there is no difference in this respect between a deed to defraud subsequent creditors and one to defraud subsequent purchasers. 18 *Johns.* 515; 2 *Mason* 252; 14 *Mass. Rep.* 245; 2 *Pick.* 184; 1 *Ashmead* 129.

Judgment reversed, and a *venire facias de novo* awarded.