## CYRUS H. McCORMICK

*v.*

## WHEELER, MELLICK & CO.

1. SHERIFF'S ADVERTISEMENT OF SALE OF LANDS — *its requisites* — *and herein when and how and by whom objection must be made thereto.* A sheriff's advertisement of a sale of land under execution merely gave notice that it would take place between the hours of 9 o'clock A. M. and the setting of the sun on the same day, not specifying any particular hour for the sale. Whether, on motion by the defendant in the execution, the court would set aside the sale made under such a notice, would probably depend upon the circumstances of each particular case, to be shown to the court by affidavit.

2. But in order to raise the question, the motion must be made by the defendant in the execution, and in apt time. The objection cannot be taken collaterally, nor by third persons.

3. AMENDMENT OF RECORDS — *when allowable, and who shall be affected thereby.*
Where a court has sustained a motion to set aside a sale of land in satisfaction
of an execution, but no entry thereof has been made of record, it is not im-
proper, so far as it relates to the parties to the judgment upon which the exe-
cution issued, upon notice to the party against whom the motion was made, to
amend the record by the minutes entered upon the judge's docket, by inserting
therein an order consistent with the action of the court on the motion.

4. Nor would it be an improper practice to allow such an amendment to be
made, even pending the trial of an action of ejectment for other premises, where
the title of one of the parties depends upon a sale under execution issued upon
the same judgment subsequently to the setting aside of the prior sale, reserving
the consideration by the court, who was trying the ejectment suit without a
jury, of the effect of such amendment as to the parties to that suit, if they were
different from the parties to the judgment.

5. But such an amendment of the record cannot be allowed to have a
retroactive effect as against persons not parties to the original record. All
material amendments of a record must be made with a saving of intervening
rights acquired by third persons.

6. In an order allowing an amendment, it is proper to express this by way
of removing all doubt. But whether expressed or not, the law makes the
reservation.

7. JUDGE'S MINUTES — *not a record.* The judgment of a court is not to be
sought in the minutes or memoranda which the judge makes upon his own
docket, and which the law does not require him to make, but which are merely
kept by him for his own convenience and to enable him to see that the clerk
accurately makes up the record.

8. SAME — *do not afford any notice of what they contain.* These minutes are a
proper means of amending the record, but until the amendment is made, by the
entry of record what the minutes contain, the public can act upon no other
means of information than the official records of the court, as kept by an officer
appointed by the law for that purpose.

9. So where an execution was returned satisfied by a sale of land, and a
motion was entered by the plaintiff in the execution to set aside the sale on the
ground that the land sold did not belong to the defendant, and the court sus-
tained the motion, and so entered in his minutes upon his docket, it was held,
there being no entry of record of the action of the court upon the motion, that
a purchaser of land which actually did belong to the debtor, under a junior
judgment, could not be charged with knowledge of what the judge's minutes
contained respecting the setting aside the prior sale under the senior judg-
ment.

10. PURCHASER UNDER JUNIOR JUDGMENT — *when protected.* Where an exe-
cution issued upon an elder judgment is returned satisfied by the sale of land,
and there is nothing of record to show that such sale has been set aside, a pur-
chaser of other lands under a junior judgment against the same defendant,

will be protected as an innocent purchaser, against the lien of the prior judgment, although the first sale may have been of lands not belonging to the debtor.

11. JUDGMENT LIENS — *how affected by the setting aside of a sale made in satisfaction of an execution.* And even though an order setting aside the sale under the elder judgment, was entered of record, its effect would simply be to create a prospective lien, not one which would relate back and overcome an intervening judgment lien.

12. SETTING ASIDE SALES UPON EXECUTION — *must be upon notice.* Sales under execution should never be set aside, in consequence of failure of title, except upon notice to the judgment debtor.

13. SAME — *of the effect, as between the parties, and as to third persons.* When a sale is set aside, after such notice, a prospective lien is created. Whether it is retrospective or not, is not a question that could arise between the judgment debtor and creditor, as, between them, it could make no difference. The rights of third persons are not affected because they are not in court. An order expressly subordinating their rights would be a nullity.

14. SAME — *remedy to subordinate rights of third persons.* If the judgment creditor who has thus procured a sale under his judgment to be set aside, claims, on equitable grounds, that the intervening rights of third persons should be subordinated to his lien, he must proceed by bill in chancery, make them parties, and give them an opportunity to defend. A decree thus made would, of course, bind all the parties.

15. ENTRIES IN EXECUTION DOCKET — *whether notice is afforded thereby.* An entry upon an execution docket, undated and unsigned, stating that a sale made under and in satisfaction of an execution, had been set aside at a certain term, affords no notice to a subsequent purchaser of other property under a junior judgment against the same debtor, that the prior sale had been set aside, there being no entry of record to that effect.

16. NOTICE TO A PARTY, *through the knowledge of his attorney.* A party cannot be charged with notice of facts within the knowledge of his attorney, of which the latter acquired knowledge while acting as the attorney of another person.

17. AMENDMENT OF EXECUTIONS — *when allowed.* An execution can only be amended when merely voidable, and not when absolutely void.

18. Such amendments are allowed, only when third persons can have no reasonable doubt, from the records, that the execution sought to be amended did in fact issue upon the judgment to which the amendment makes it conform, and are, therefore, not injured.

19. But no court would ever *create* an execution by way of amendment, where none existed before.

APPEAL from the Circuit Court of Rock Island county; the Hon. IRA O. WILKINSON, Judge, presiding.

This was an action of ejectment instituted in the court below by the appellees against the appellant, to recover the possession of the west one hundred acres of the north-east quarter of Section seven, in Township nineteen north, Range three east of the fourth principal meridian, situate in the county of Rock Island. A trial resulted in a finding and judgment for the plaintiffs below, from which the defendant took this appeal. All the important facts are stated in the opinion of the court.

Mr. Frederick Sackett, and Mr. A. Webster, for the Appellant.

Mr. Charles M. Osborn, for the Appellees.

Mr. Justice Lawrence* delivered the opinion of the Court:

This was an action of ejectment, depending upon the priority of certain judgment liens. The judgments were against William Marshall, Jr., in the Circuit Court of Rock Island county, and in the order of time, stood as follows:

1.   At the December term, 1857, for $180.90, in favor of William L. Lee.

2.   At the March term, 1858, for $258.67, in favor of McCarn & Scott.

3.   At the June term, 1858, for $226.79, in favor of Harper & Steel.

4.   At the January term, 1861, for $6,472.42, in favor of Wheeler, Mellick & Co., the appellees.

5.   There was also a judgment rendered June 8, 1859, in the Circuit Court of the United States, at Chicago, against the same defendants, in favor of Thompson & Barnes, for $1,180.20.

Executions were first issued, and at about the same time, on the judgment in favor of Lee, and on that in favor of Harper & Steel. The Harper & Steel execution was levied on the premises in controversy, and they were struck off at the sale to

* This case was submitted upon briefs, before Mr. Justice Lawrence came upon the bench, but was not decided until afterwards.

the plaintiffs in the execution for the amount of the judgment and costs.

The Lee execution was levied on other lands supposed to belong to Marshall, but to which he seems to have had no title. These lands were bid in at the sheriff's sale, by Lee, for the judgment and costs. Both executions were returned satisfied in full. This was in August, 1858.

At the September term, 1859, a motion was made in court to set aside the sale under the Lee judgment. The minutes of the judge, upon his docket, show the motion to have been allowed, but no entry of the order was ever made in the records of the court until the trial of the case at bar.

In October, 1859, Lee, treating his sale as vacated by the supposed order, sued out an *alias* execution on his judgment, under which he redeemed the premises in controversy from the Harper & Steel sale, and they were resold for a sum equal to the redemption money paid by Lee, and the amount of his judgment. Certificates of redemption and sale were duly filed.

In December, 1859, Thompson & Barnes redeemed from the last mentioned sale under their judgment in the Circuit Court of the United States. The premises were then sold by the marshal, the certificate of sale assigned to McCormick, the appellant herein, and a deed made to him by the marshal in due season. The deed was recorded in June, 1860, and under it appellant went into possession, and so remained to the commencement of this suit.

The foregoing state of facts, sustained by certain amendments allowed on the trial, and to be hereafter considered, constituted, substantially, the title set up by the defendant below, appellant here. We have stated it, first, because the proceedings under which it was acquired, were first in the order of time.

The title shown by the plaintiffs below was as follows: The McCarn & Scott judgment; execution thereon February 9, 1861, and levy on the premises in controversy; sale to McCarn & Scott in March, 1861; redemption in March, 1862, by the plaintiffs below, under their judgment of January, 1861; sale after the redemption, at which they bid in the property, and

sheriff's deed to them, dated June, 1862. All these proceedings, under the McCarn & Scott and the Wheeler & Mellick judgments, were had after the appellant had procured and recorded his deed.

Before considering the title of the appellant, it is proper to notice an objection taken by him to the title of the appellees, as appearing upon its own face. The sheriff's advertisement of sale, under the judgment and execution in favor of appellees, did not specify any particular hour for the sale, but merely gave notice that it would take place between the hours of nine o'clock A. M. and the setting of the sun on the same day. It is urged that this advertisement was insufficient, and the sale therefore void. Whether, on motion by the defendants in the execution, the court would set aside a sale for this reason, would probably depend upon the circumstances of each particular case, to be shown to the court by affidavit. But in order to raise the question, the motion must be made by the defendant in execution, and in apt time. The objection cannot be taken collaterally and by third persons. *Swiggart* v. *Harber*, 4 Scam. 364; *Rigg* v. *Cook*, 4 Gilm. 336; *Phillips* v. *Coffee*, 17 Ill. 157.

We now come to the title of the appellant. On the trial of the case in the court below, the judge, on motion of the appellant, permitted the record of the September term, 1859, to be amended, by inserting therein an order setting aside the first sale, made in August, 1858, on the Lee judgment. The amendment was made by the minutes entered upon the judge's docket of that term, and upon written notice to Marshall, the judgment debtor, and so far as related to the parties to that judgment, it was not improper. As this case was on trial before the court, and without a jury, it is probable that the court allowed the amendment to be made *pro forma*, reserving the consideration of its effect, *as to the parties to this suit*, until he should pass upon the entire case. Such a practice is not improper. But could this amendment, or rather this creation of a new record, be allowed to have a retroactive effect, as against persons not parties to the original record? If not, then the title of the appellee is paramount, as that of the appellant would

stand upon a judgment satisfied of record, prior to the sale under which the appellee claimed and satisfied at the time of said sale.

There is no doctrine resting on a more stable ground, both of reason and authority, than that all material amendments of a record must be made with a saving of intervening rights acquired by third persons. In an order allowing an amendment, it is proper to express this by way of removing all doubt. But whether expressed or not, the law makes the reservation. For what is the judgment of a court? It does not reside, unspoken and unwritten, in the breast of the judge. It is not to be sought in the minutes or memoranda which the judge makes upon his own docket, and which the law does not require him to make, but which are merely kept by him for his own convenience, and to enable him to see that the clerk accurately makes up the record. These minutes, it is true, are a proper means of amending a record, but until the amendment is made, the public can act upon no other means of informa tion than the official records of the court, as kept by an officer appointed by the law for that purpose. How often have this and other courts expressed the maxim, that "a record imports absolute verity"?

Now when, in March, 1861, McCarn & Scott levied their execution on these premises, the Lee judgment had been satisfied by sale, as appeared by the return of the sheriff, which was a public record, and there was no record of the court showing that that sale had been set aside. The motion to set it aside had been made, and the presiding judge had decided to allow it, but McCarn & Scott were not parties to that motion, and they could be held to no further knowledge of what actually occurred in court than was furnished by what the law makes the sole authentic evidence of judicial proceedings, to wit, the record. They bought, then, as innocent purchasers, having the right to believe that their judgment was the oldest unsatisfied lien.

It is urged, however, that appellant's certificates of redemption and of purchase, and his deed under the Lee judgment,

were all recorded before the sale under the McCarn & Scott judgment, and were therefore notice to the appellees of appellant's title.  This is true, but of what did they apprise the appellees?  Simply that the appellant claimed a title under the Lee judgment, and this would, of course, put McCarn & Scott upon inquiry as to the lien of that judgment.  But if they referred to the record, they found it satisfied, and there was no order in the record setting the sale aside.  Parties cannot be held to notice of what has no legal existence, and we should be going quite too far, were we to hold them to notice of informal memoranda, on the docket of the judge, by which the record might possibly, at some future time, be amended, and require them to act as if such amendment had been already made.  The public is bound by the record of a court, and on the other hand it has the right to abide by it.  What we have said in regard to the judge's minutes applies with at least equal force to the unsigned and undated memorandum upon the execution docket.

It is, however, insisted, that Mr. Curtis was attorney for both Lee and McCarn & Scott, and that thus the latter had notice of the intention of the court to set aside the Lee sale.  All that need be said in regard to this is, that Mr. Curtis is not held to notice of facts as attorney of McCarn & Scott, of which he acquired knowledge while acting as attorney of Lee.  This principle is so familiar as hardly to need the citation of authorities.  2 Atkyns, 242; 13 Vesey, 120; 8 Watts, 489; 4 Watts & Serg. 102.  The English courts have recently manifested a disposition to depart from this rule, but we deem it a principle just in itself, and founded on wise considerations of policy.

The views above set forth in regard to amendments are fully sustained by former cases decided by this court.  *Coughran* v. *Gutcheus*, 18 Ill. 390, and *Shirley* v. *Phillips*, 17 Ill. 473, and the numerous cases there cited.  The amendment of executions in matters of form, or in cases of variance from the judgment, where it is satisfactorily shown that the execution really issued upon the judgment it purports to describe, depends upon principles which do not apply to the case at bar.  An

execution can only be amended when merely voidable, and not when absolutely void. Such amendments are allowed only when third persons can have no reasonable doubt, from the records, that the execution sought to be amended did in fact issue upon the judgment to which the amendment makes it conform, and are therefore not injured. But it may be safely asserted that no respectable court ever created an execution, by way of amendment, where none existed before.

But we have also considered the other question presented by the argument of appellant's counsel, and as it is so nearly related in principle to the one of which we have been speaking, it is proper that we should express our opinion in regard to it. Assuming that the amendment can be considered as relating to the September term, 1859, or that the order setting aside the sale under the Lee judgment had been made and entered in due form at that time, what would have been its effect as against the McCarn & Scott judgment? Since August, 1858, that judgment had been the eldest lien. During all that time, a period of over twelve months, McCarn & Scott had a right to rest upon it in quiet as security for their debt. The judgment debtors may have had ample personal property out of which the judgment might have been made, if the owners thereof had not reposed upon the security of their lien. They were lulled into this security by the act of Lee himself, who had caused his judgment to be satisfied of record. Can there be any principle of law which, under such circumstances, would postpone their judgment to that of Lee, and of two innocent parties, protect that one who has committed a blunder at the expense of the other who has not?

But there would not only be palpable injustice as between these parties, in thus ante-dating the lien of Lee's revived judgment, but the establishment of such a principle would grossly violate public policy, by destroying faith in public records and impairing the security of titles. For there clearly can be no security in a system which to-day pronounces a piece of land to be free from all incumbrances, and to-morrow allows

it to be suddenly covered with liens which relate back through a period of years and overcome intervening titles.

On the 1st of September, 1859, Lee had no lien. It had been lost by his own act since August, 1858. In September, 1859, he sought to revive his judgment by setting aside the sale, and we now assume he did revive it. The counsel for appellant contends that the lien of this revivor related back to 1857, and overreached all intermediate judgment liens. Now, if this be so, we are entirely unable to perceive why the revived judgment would not, upon principle, equally overreach an intervening mortgage or an intervening purchase. Yet we do not understand the counsel for the appellant to go this far. He admits, that persons who acquire an interest in the lands of the judgment debtor, on the faith of the satisfaction, must be protected. But their equity is no stronger than that of a judgment creditor who has reposed upon the facts disclosed by the record, and thus lost the opportunity of making his judgment out of other property of the debtor. It is to be remembered, moreover, that our recording laws place creditors and subsequent purchasers on the same footing.

The cases of *Jackson* v. *Shaffer*, 11 J. R. 519, and *Ridge* v. *Prather*, 1 Blckfd. 400, are relied upon by the counsel for the appellant. Both were cases where, an execution not having been issued within a year and a day, the judgment was revived by *scire facias*, and the question was as to the effect of the revivor against intervening incumbrances. In the case in Blackford the court decide that, under the laws of Indiana, the lien of the judgment is not lost, in consequence of failure to take out execution within a year and a day, although the right to take out an execution, without *scire facias*, is suspended. But they do not decide or intimate that the lien of the judgment, if it had been lost, would have related back upon being revived by *scire facias*, which is the question at bar. In the case before us, the lien of the Lee judgment was confessedly gone during the time that it was satisfied of record by the first sale. This court has already said, in *Hughes* v. *Streeter*, 24 Ill. 647, "when the plaintiff has sold property in satisfaction, his judg-

ment ceases to exist, and when the record entry is vacated, it is thereby revived and receives new vitality. The exercise alone of judicial powers, equal to that which first made the decision, can impart new life to a judgment which has been satisfied." The question before us, then, being purely one of relation, the case in Blackford which merely decided that the lien had never been lost or suspended, has no bearing.

In the other case (*Jackson* v. *Shaffer*, 11 J. R. 519,) it is impossible to say whether the court decided that the lien of the judgment had never been suspended, or that upon revivor by *scire facias* the lien related back to its rendition, even to the prejudice of intervening incumbrancers. If the latter, we can only say that, justly distinguished as that court, at that period, was, we cannot adopt a doctrine that seems to us so inconsistent with reason and justice, and one that is certainly unsustained by any other authority, so far as we have been able to discover. A contrary position has been held in subsequent cases in the same court, as well as in various other States. *Johnson* v. *Benedict*, 13 J. R. 533 ; *Taylor* v. *Ramsey*, 4 Hill, 619 ; *Tracy* v. *Tracy*, 5 McLean, 456 ; *Bank of Mobile* v. *Ford*, 13 Ala. 431 ; *Ross* v. *Weber*, 27 Ill. 223 ; *Norton* v. *Beaver*, 5 Ohio, 178 ; *Eppes* v. *Randolph*, 2 Call, 103.

Another and conclusive reason why the setting aside the sale under the Lee judgment cannot make the lien, created by the order of revivor, overreach that of McCarn & Scott's judgment, is, that they were in no way parties to that proceeding, and by a principle of universal law their rights cannot be divested by it. Before the order was made, they held the undisputed paramount lien. By the order it is claimed their lien was substantially destroyed by being subordinated to another. Yet they had no notice that such order would be applied for, and no day in court to protect their rights. On what principle of law, then, can this order be considered other than a nullity as to them?

The practice and the effect of setting aside sales under execution, in consequence of failure of title, rest on very plain principles. The order should never be made except upon no-

tice to the judgment debtor.   When made after such notice, a prospective lien is created.   Whether it is retrospective or not, is not a question that could arise between the judgment creditor and debtor, as, between them, it could not make the slightest difference.   The rights of third persons are not affected because they are not in court.   An order expressly subordinating their rights would be a nullity.   If the judgment creditor claims, on equitable grounds, that their rights should be subordinated to his lien, he must proceed by bill in chancery, make them parties, and give them an opportunity to defend.   A decree thus made would of course bind all the parties.   An order made as in this case binds only the plaintiff and defendant, leaving the liens of third persons where they stood before.

*Judgment affirmed.*