Note.—See under (1) 28 Cyc. pp. 636 (Anno), 649; 19 R. C. L. p. 1066; 3, R. C. L. Supp. p. 992; 4 R. C. L. Supp. p. 1305: 5 R. C. L. Supp. p. 1056. (2) 28 Cyc. pp. 1540, 1548, 1560.

---

## ATOKA STATE BANK et al. v. CHEEK et al.

No. 15446—Opinion Filed July 14, 1925.

Rehearing Denied Jan. 4, 1927.

1. **Guardian and Ward—Oil and Gas—Guardian Sale of Lease—Order of Confirmation Essential—Time for Performance by Purchasers.**

In a probate proceeding by a guardian, to sell an oil and gas lease upon lands owned by his minor ward, an order of confirmation of the guardianship sale is necessary to complete the sale and pass title; and where a condition of a sale and purchase contract covering an oil and gas lease makes the performance to depend upon a guardianship sale of an oil and gas lease upon interests in the property owned by minors, and five days are allowed after such guardianship sale to complete the purchase. the purchasers have five days after a valid order of confirmation of sale of the oil and gas lease upon the minor's interests is entered, by the county court conducting the guardianship sale proceedings, within which to complete the purchase.

2. **Same—Judgment—Nunc Pro Tunc Order of Confirmation—Effective Against Third Persons Only from Filing Date.**

Where a nunc pro tunc order and judgment of confirmation of the guardianship sale is entered by the county court, such order and judgment is binding upon persons not parties to the guardianship proceedings and without notice. only from the time it is filed in the proceedings.

3. **Disposition of Cause.**

Record examined, and held, that it does

not support the judgment rendered for plaintiffs and against the defendants; and further held, that a reversal of the judgment is required, with directions to enter judgment for the defendants.

(Syllabus by Shackelford, C.)

Commissioners' Opinion, Division No. 4.

Error from District Court, Atoka County; J. H. Linebaugh, Judge.

Action by G. C. Cheek, O. L. Ridgway, G. C. Vittetoe, and Edward Garrett against Atoka State Bank, E. C. Armstrong, and J. Randall Connell. Judgment for plaintiffs, and defendants appeal. Reversed and remanded, with directions.

J. R. Hannah and McPherren & Wilson, for plaintiffs in error.

J. G. Rails, for defendants in error.

Opinion by SHACKELFORD, C. The plaintiffs in error were the defendants below, and the defendants in error were the plaintiffs. The parties will be referred to herein as plaintiffs and defendants, as they appeared in the trial court.

It appears from the record that the plaintiffs were the owners of certain undivided interests in some tracts or parcels of land in Carter county; and the plaintiffs and the other defendants, except the Atoka State Bank, entered into a contract wherein the plaintiffs agreed to sell and the defendants to buy an oil and gas lease covering the interes's held by the plaintiffs in such parcels of land. It seems that some minors living in Oklahoma City owned the remaining portion of the land, and the buyers wanted either the interests of the minors in the land sold, or an oil and gas lease on their interests sold, so that the entire interests in the oil and gas rights might be merged into an oil and gas lease. A contract was made and placed in escrow covering the matter, and as a part of the agreement defendants, parties to the contract, placed in escrow in the Atoka State Bank ten per cent. of the pur hase price of the lease, amounting to $3,919.15, as a part payment to be applied upon the purchase price of the lease when the deal should be consummated. One of the conditions of the contract is to the effect that the guardian of the minors should sell an oil and gas lease on the interest of the minors; and the contract is to be put in escrow pending the guardianship sale; and it is provided that the deal shall be consummated in five days after the guardianship sale; and it is agreed that if the buyers shall fail to carry out their contract to pay the balance of the lease money, then the sellers are to have the oil and gas lease returned to them, and also to have the deposit delivered to them as liquidated damages for the failure to carry out the contract. If the buyers should comply with the contract, the lease should be turned over to the buyers. The contract was placed in escrow with the oil and gas lease and the money deposited. Proceedings were prosecuted to a sale of an oil and gas lease on the interest of the minors in the land. After the guardianship sale of the oil and gas rights of the minors, the buyers did not comply with the contract by paying the balance of the purchase price of the lease, and the plaintiffs brought the action against them and the Atoka S'ate Bank for the escrow money. The escrow agreement was made on the 19th of January, 1922. The oil and gas lease was made as of the same date. Suit was filed on the 28th of March, 1922. The plaintiff's petition alleges the making of the escrow agreement and that the terms and conditions of it had been performed by the plaintiffs, and that defendants failed to comply with it and complete the purchase of the oil and gas lease after the guardianship sale of the oil and gas lease on the minors' interest in the land. A copy of the escrow agreement is attached as a part of the petition. They pray for judgment of the court requiring the defendant to deliver to them the escrow agreement, the oil and gas lease attached, and the escrow money in the sum of $3,919.15, and for other relief.

The defendant bank answered, as the escrow holder, tendering the instrument held in escrow into court, and asked to be discharged. An order of the court was made directing the court clerk to accept from and receipt the bank for the instruments held in escrow. The defendants Armstrong and Connell filed their answer, admitting the execution of the escrow agreement, and that they deposited with the agreement in escrow the sum of $3,919 15 as pleaded; but tendered the defense that the plaintiffs had agreed to have sold the interest held by the minors in the oil and gas rights in the land, at a valid guardianship sale, and furnish a valid, binding, enforceable lease to such interest, but this was not done; that while a sale was made by the guardian of the minors and approved by the court, it was invalid for several reasons; that it was a conditional sale; that the sale was made to the guardian of the minors himself, and was confirmed as made, the order of confirmation showing that the lease was paid for by and sold to the guardian; that the said sale was insufficient to divest title out

of the minors and invest the same in the purchaser, and was not in compliance with the escrow agreement, and not of such force and effect as would require defendants to perform their agreement by accepting the oil and gas lease and paying the balance of the purchase price. They prayed for a return of the escrow money, and for other relief. Plaintiffs replied by a general denial of the matters alleged in defense.

The parties waived a jury trial, and the cause was submitted to the court, resulting in a judgment for the plaintiffs and against the defendants in the sum of $3,919.15, the amount of the escrow money; and directed the court clerk to turn the money held by him over to plaintiffs in satisfaction of the judgment. The defendants prosecute appeal and present several assignments of error, which we will examine in answer to the following question: Was the trial court justified by this record, in finding, in substance and effect, that the record of the guardianship sale of the oil and gas lease on the interests in the land owned by the miners, as confirmed by the county court on March 18, 1922, showed on said date that a valid guardianship sale had been conducted so as to divest title out of the minors and invest it in the purchaser so as to require the defendants to comply with the condition of the escrow agreement requiring them to buy the lease within five days after the guardianship sale had been confirmed on the day named, or forfeit the $3,919.15 escrow money; and in rendering judgment for the plaintiffs and against the defendants for a forfeiture of the escrow money? If so, then the judgment must be upheld; if not, then the question must be answered in the negative, and a reversal must follow.

The record discloses that pursuant to the terms of the escrow agreement, the plaintiffs, or some of them, proceeded to have G. C. Cheek appointed guardian for the minors, who owned an interest in the land, and known as the Humphrey children, by a proceeding in the county court of Oklahoma county, and after the appointment, he filed a petition for an order of sale of an oil and gas lease upon the interest in the land held by the Humphrey children, and an order of sale was made, notice given, and sale made and a return of sale filed by the guardian, showing that a sale was made to G. C. Vittetoe for a bonus of $1,000. To the return was attached a copy of an oil and gas lease which the guardian seems to have thought should be executed in completing the sale. Thereafter the return of sale was examined and an order of con-

firmation of sale made by the county court. In such order of confirmation the court made certain findings, among which are the following:

"Fourth: That the bonus paid by G. C. Cheek is a reasonable bonus. * * * Sixth: The court further finds that G. C. Cheek, the lessee is responsible," etc.

The order and judgment of the county court is as follows:

"It is, therefore, by the court considered, ordered and adjudged that the said G. C. Cheek, as such guardian, execute and deliver to the said lessee, G. C. Cheek, the original oil and gas mining lease, a true and correct copy of which is attached to said guardian's report and return of sale, and that said lease be, and the same is, hereby approved and confirmed," etc.

The copy of oil and gas lease attached to the guardian's return, said to be a true and correct copy of the original which was confirmed and approved by the order, recites, among other things, that "whereas G. C. Check was the highest and best bidder for such oil and gas mining lease, and did bid the sum of $1,000 as a bonus for said lease." The order of confirmation was made on the 18th day of March, 1922, and the lease bears the same date. The record shows that a sale had been attempted sometime before the one above referred to, but it was abandoned because of an erroneous or insufficient description of the property.

It seems that the defendants were advised within the next few days after order of confirmation was made, that there were some irregularities in the proceedings; and defendants, on the 22nd of March, 1922, called the attention of plaintiffs and their attorney to the fact that they had some information that the proceedings, by which it had been attempted to sell the interest of the minors in the oil and gas rights, were not regular. The attorney for the plaintiffs, on the 24th of March, 1922, by letter, advised defendants that they had been misinformed; that the sale, the confirmation and the lease were unconditional; that Mr. Vittetoe had bought the lease; and that defendants' informant should have sent them a copy of the return of sale and order of confirmation. In the letter the defendants were advised that "we have demanded of the bank delivery of the envelopes containing the escrow agreements, the lease and the forfeit." Thus, it seems that the plaintiffs had taken action, in effect declaring a forfeiture of the defendants' rights in the escrow agreement and the subject-matter thereof, including the cash deposit of $3,-

919.15. After receipt of this letter and within a few days thereafter the defendants procured a copy of the order of confirmation of sale of oil and gas lease on the minors' interest in the land.

We have above quoted from the findings of the county judge, showing that he had found that the lease had been sold by G. C. Cheek, guardian of the minors, to G. C. Cheek, purchaser of the lease at the guardianship sale; and confirmed the sale made by G. C. Cheek, guardian of the minors, to G. C. Cheek, and ordering an oil and gas lease executed to the said G. C. Cheek. Thus, it appears that the copy of the order of confirmation showed that G. C. Cheek, as guardian of the minors, had sold an oil and gas lease on the minors' interest in the land to himself, and the sale was confirmed. The testimony tends to show that neither of the defendants who were parties to the escrow agreement were present at the sale, and the information they received about the sale was mainly from the copy of the order of confirmation. After receiving the copy of the order of confirmation, the defendants seem to have returned it to the clerk and had it certified. While these matters were transpiring, and on the 28th day of March, 1922, ten days after the guardianship sale of the oil and gas lease was confirmed, the plaintiffs filed their suit seeking to have delivered to them the escrow agreement, together with the escrow money, the sum of $3,919.15. There is also evidence in the record tending to show that shortly after the suit had been filed and before service of summons upon the defendants, they, or one of them, inquired of attorney for the plaintiffs if the lease could be delivered and got the information that the lease had been sold to other parties.

The record also shows that on the 7th of April, 1922, G. C. Vittetoe filed in the guardianship case an application for a nunc pro tunc order approving and confirming the sale of an oil and gas lease on the minors' interest in the land to G. C. Vittetoe instead of to G. C. Cheek. It is stated in such application that the original order of confirmation was, by mistake and inadvertence, made to read that the sale was made to G. C. Cheek, and confirmed in his favor, when in fact the sale had been made to G. C. Vittetoe; also that the effect of the order of confirmation was to cloud the petitioner's title to the lease on the minors' interest in the land. It seems that the county judge acted upon this application on the day before it was filed, so that on the 6th of April, 1922, the county judge made a nunc pro tunc order confirming the sale of the oil and gas lease on the minors' interest in the land. The nunc pro tunc order and judgment makes reference to the "original oil and gas mining lease, a true and correct copy of which is attached to said guardian's report and return of sale," and the same was, by the order, approved and confirmed. We have heretofore observed that the copy referred to shows that "G. C. Cheek was the highest and best bidder for such oil and gas mining lease," and that he had paid $1,000 bonus therefor. If the copy so attached to the return of the guardian is, in fact, a "true and correct" copy of the original as executed by the guardian, the original lease must still show upon its face that "G. C. Cheek was the highest and best bidder." Whether the lease executed was changed to show that G. C. Vittetoe was the highest and best bidder we are not advised by this record.

One of the conditions of the escrow agreement is that the guardian of the minors should sell an oil and gas lease upon the interest of the minors in the land, and if this should not be done within four months, then the contract should be null and void, and the escrow money returned to the defendants. The defendants insist that the provision of the contract means that the oil and gas lease to be executed by the guardian should be a valid, binding, enforceable lease, such as would divest the title out of the minors and invest the title in the buyer at the guardian's sale. It seems so certain that such is the meaning of that provision of the escrow agreement that we think it would be idle and superfluous to discuss the matter. Nor is it seriously disputed that such is the meaning of the escrow agreement. The escrow agreement required the defendants to accept the oil and gas lease on the interests in the land held by the plaintiffs and pay the balance of the agreed purchase price, within five days after the completion of the guardian's sale of oil and gas lease on the minors' interest in the land, that is, within five days after a valid guardianship sale should be confirmed. There seems to be no doubt that an order and judgment of the county court confirming the sale is a necessary part of the probate proceedings to divest the minors of the title and invest it in the purchaser at the guardianship sale. The order of confirmation was made in the county court on March 18, 1922. The defendants were neither of them present at the sale. They received information after the making of the order of confirmation that there were some irreg-

ularities in the sale, and some of the oral testimony tends to show that on the day the sale was made the county judge exacted an agreement on the part of the plaintiffs, or some of them, that certain contributions should be made by the adult owners to the minor's so that all the owners, both adult and minors, should receive the same amount per acre for the interest owned. Thus, it would seem that some sort of conditions entered into the sale so that the sale did not amount to an unconditional sale, which is necessary in such proceedings. The defendants' attention was called to the matter and they made inquiry and received a letter from the attorney for the plaintiffs, in which the attorney expressed himself as willing to wager great odds that the sale was a valid sale; also he advised that they should examine the return of the guardian and the order of confirmation; also he advised that plaintiffs were already claiming a forfeiture of the escrow money and had made demand upon the Atoka State Bank, the escrow holder, that it deliver to them the instruments placed in escrow, together with the forfeit money, the sum of $3,919.15. The letter conveying this information was dated March 24, 1922, or on the sixth day after the order of confirmation was entered, according to the date of it. Four days later, on March 28, 1922, the plaintiffs filed their suit. The plaintiffs, through their attorney, said on March 24, 1922, in substance and effect: "The guardianship sale is valid, the five days have elapsed, you have forfeited your rights to the lease and to the good faith money, and we have demanded of the escrow holder that it deliver to us the forfeit. You should have examined the proceedings." And four days afterwards brought the action against the bank and against defendants, parties to the escrow agreement.

About the date the suit was filed the defendants procured a copy of the order of confirmation and it showed that the lease had been bid off by and sold to G. C. Cheek; that is, the order of confirmation seemed to show that the lease was sold by the guardian of the minors to himself, upon his own bid. Then, upon the one hand the defendants had the assurance of plaintiffs' attorney that the guardian sale was regular; and upon the other hand, the order of confirmation showed that the guardian had sold the lease to himself. There can be no doubt but that the order of confirmation is the better evidence about what had occurred at the sale; and it is certain that if the guardian had bid off and bought the oil and gas lease at his own sale, the sale was void; and this is precisely what the order of confirmation seemed to show upon its face. The order of confirmation showed upon its face that a valid, legal and binding sale of an oil and gas lease upon the minors' interest in the land had not been made; or, at the very least, it was sufficient to put the defendants upon their inquiry with reference to the regularity of the guardianship sale. This was the condition of the guardian's sale record when the forfeiture was declared by the plaintiffs; when they demanded that the escrow money be turned over to them; and when they filed their suit to recover the escrow money; and such continued to be the condition of the record until April 7, 1922, when the nunc pro tunc order was filed. It seems that the similarity of the name of the guardian and the name of the purchaser of the oil and gas lease at the guardian's sale, as shown by the order of confirmation, would require the defendants to hesitate about the matter, and put them on their inquiry as to what had occurred at the sale. If such inquiry led to knowledge that the order of confirmation spoke the truth in its findings made by the court, they would know that the sale was void; if it led to knowledge that mistake and inadvertence had resulted in the order of confirmation which was made, there was still something else to be done to make the record show a valid sale of oil and gas lease by the guardian, because the sale that had been made, in fact, had not yet been confirmed.

The buyer of the lease, Mr. Vittetoe, one of the plaintiffs here, seemed to recognize this fact when he applied to the county court to make a nunc pro tunc order of confirmation of the sale, which must have been as late as April 6, 1922, nine days after the plaintiffs' suit was filed, and which order was filed on the next day. It seems that the defendants made inquiry, along about the time the nunc pro tunc order was made, if the lease could be delivered, and were advised that it had been sold to a third party. It seems certain from the probate record as presented in this record, that if the oil and gas lease on the minors' interest in the land was sold in the guardianship sale to G. C. Vittetoe, the probate record was not completed by an order of confirmation by the county court until the 7th of April, 1922. The order of confirmation made by the county court and filed in the guardianship case on March 18, 1922, was no more than a mere idle act or a nul-

lity, in that it showed upon its face that a void guardianship sale had been made; that is, it showed a void sale had been made unless the guardian is authorized to sell his ward's property to himself. None of the parties contend that such a sale can be made.

Guardian sales are governed, for the most part, by statutes governing the estates of decedents. (Section 1478, Comp. St. 1921.) No executor or administrator can buy property at his own sale. (Section 1305, Comp. St. 1921.) A guardian cannot be permitted to sell his ward's property to his (guardian's) wife. (Burton v. Compton, 50 Okla. 365, 150 Pac. 1080.)

We must conclude that the order of confirmation, which shows that G. C. Cheek, guardian, sold his ward's property to G. C. Cheek, purchaser, is sufficient to put third parties on inquiry, and if it is found that the purchaser is the same individual as the guardian, the order of confirmation establishes that a void sale has been made. When a valid guardianship sale is made, it is necessary that the sale be confirmed by court order, to complete the record of the probate proceeding. When the county court is satisfied of the legality of the guardianship sale, etc., "the court must make an order confirming the sale and directing the conveyance to be executed. The sale from that date is confirmed and valid." "If, after confirmation, the purchaser neglects or refuses to comply with the terms of the sale," the court may take further steps in the matter. (Section 1284, Comp. St. 1921.) The purchaser at the guardian's sale is bound from the time of the confirmation under this section of the statute. Let it be admitted, as established, that Mr. Vittetoe bid an unconditional bid of $1,000 for the oil and gas lease on the interest in the land owned by the minors, and that was the highest and best bid, and the lease was knocked off to him on his bid, and the sale proceedings were regular up to that point. When was he bound to perform his part of the bargain? Section 1284, supra, answers the question. He is bound from and after the confirmation of the sale made to him. Did the order of confirmation made on March 18, 1922, bind Mr. Vittetoe? That order confirmed the sale made to G. C. Cheek as the highest and best bidder. Could such an order of confirmation bind Mr. Vittetoe? We are unable to see how; and we think he was not bound by the order. Even the copy of the lease attached to the return made by the guardian, and referred to as a true and correct copy, showed that G. C. Cheek was the highest and best bidder.

If Mr. Vittetoe was not bound by the order of confirmation under the statute, he being a party to the proceeding, in that he was in fact the highest and best bidder, how can other and outside parties be bound by the order of confirmation made on that date? Under the escrow agreement defendants were bound to perform in five days after a valid guardianship sale of the minors' interest had been consummated. The guardianship sale was consummated when the county court should be satisfied of the regularity and legality of the sale and make an order of confirmation. Then the purchaser at the guardianship sale was bound by the proceedings and the defendants had five days thereafter to perform the conditions of the escrow agreement or forfeit the money placed in escrow. As between the guardian of the minors, G. C. Cheek, and the purchaser at the guardianship sale, G. C. Vittetoe, the order of confirmation made and filed in the guardianship case on March 18, 1922, was a mere idle and futile gesture of the court, and had the effect of unnecessarily encumbering and clouding the record, because the sale which was purported to be confirmed had never, in fact, been made. As to the defendants, it was sufficient to put them on their inquiry, and inquiry would necessarily lead to knowledge that no such sale had ever been made, and that the purported order of confirmation did not confirm the sale that had really been made. It was important and necessary that the county court make some order to clear the probate record of the court's idle and futile gesture. The purchaser at the guardianship sale sought to have this done by a nunc pro tunc order. He would have as well asked the court to make an order vacating the idle order of confirmation and expunge it from the record on the ground that the sale referred to in the order had never, in fact, been made, and the order resulted from mistake and inadvertence.

The court entered an order in response to the application for a nunc pro tunc order. This is designated "order nunc pro tunc, approving and confirming sale of oil and gas lease by guardian." This order was filed in the probate proceedings on the 7th of April, 1922. The county judge, sitting in probate proceedings, is not required to make order of confirmation of guardianship sales at any particular time. The order is due to be made by him when the judge understands the facts and is satisfied with the regularity of the proceedings and the legality of the sale. In the case under consideration, the county judge could approve and confirm the

guardianship sale which was, in fact, made, as well on April 7, 1922, as on March 18, 1922, and the probate record of the guardianship sale was completed as of April 7, 1922, in so far as it would affect all persons not parties to the proceeding. The defendants who signed the escrow agreement were not parties to the probate proceedings. They had no notice that a nunc pro tunc order was to be applied for or made, even if they could have been bound by such proceeding if they had been notified, which matter we are not required here to decide. All the notice they had was such as would put them on their inquiry as to the regularity of the sale, and if the order of confirmation spoke the truth, a void guardianship sale had been made; and a few days later a forfeiture had been declared and the suit filed for the forfeiture, all of which happened before the probate sale proceedings were finally concluded by an order of confirmation of the sale which had, in fact, been made.

It seems that these defendants could not be bound to perform their part of the escrow agreement until the probate sale proceedings should be completed, and they then had five days within which they could act. It seems to be well settled that they could not be affected by the nunc pro tunc order confirming the guardianship sale, except from the date it was filed in the probate case. Farnham et al. v. Hildreth, 32 Barb. (N. Y.) 277; Ferrell et al. v. Hales, 119 N. C. 199, 25 S. E. 821; Davidson v. Richardson, 50 Or. 323, 91 Pac. 1080; Acklen v. Acklen et al., 45 Ala. 609; Wells v. Geiseke et al., 27 Minn. 478, 8 N. W. 380; McCormick v. Wheeler, Mellick & Co., 36 Ill. 114, 85 Am. Dec. 388; Jones v. Gallagher, 64 Okla. 41, 166 Pac. 204; Marker v. Gilliam, 80 Okla. 250, 196 Pac. 126; Perkins v. Haywood, 132 Ind. 95, 31 N. E. 670; Vinson v. Cook, 76 Okla. 46, 184 Pac. 97.

The probate proceeding was completed when the probate sale was finally confirmed on April 7, 1922. Five days were given thereafter by the terms of the escrow agreement to pay the balance of the bonus on the lease, or forfeit the escrow money. The record seems to show that plaintiffs had put themselves in a position where they could not deliver the lease before or about the time the probate sale record was completed. It follows that the question above stated must be answered in the negative. The record does not support the judgment appealed from. It seems plain that plaintiffs made a premature claim for the escrow or forfeit money, and brought the action prematurely. Also, that when the time came that defend-

ants would be bound to perform the conditions of the escrow agreement or forfeit the escrow money, plaintiffs had put it beyond their power to deliver the lease, as they had contracted to do, it having been sold to some third person; also, that there is no theory presented by the record on which the judgment in favor of the plaintiffs and against the defendants for the forfeit money can be upheld. The record requires a reversal of the judgment of the trial court.

We recommend that the judgment be reversed and the case remanded to the district court of Atoka county, with directions to vacate the judgment in favor of the plaintiffs and enter judgment for the defendants.

By the Court: It is so ordered.

Note.—See under (1) 28 C. J. p. 1189, §330; p. 1204, §353. (2) 28 C. J. p. 1192, §334. (3) 4 C. J. p. 882, §2854.